NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0628n.06

No. 15-1725

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 29, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NIGEL WRIGHT, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| S. L. BURT, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Nigel Wright was tried and convicted of aiding and abetting in the murder of Travis Goodwin and sentenced to life imprisonment. The evidence against Wright included the identification testimony of eyewitness Dawayne Currie and the testimony of Officer Thomas about statements Goodwin made before his death, indicating his fear of Wright. In his petition for a writ of habeas corpus, Wright claimed that the admission of Goodwin's statements violated his Sixth Amendment right to confrontation and that his trial counsel was ineffective for failing to object on this basis. The key issue in assessing the merits of both claims is whether admission of Goodwin's statements affected the outcome of the trial by bolstering Currie's credibility. The state appellate court said no, but the district court said yes. The respondent appeals the district court's grant of the writ. We reverse because we do not find the state court's decision to be contrary to or an unreasonable

application of clearly established federal law or an unreasonable determination of the facts in light of the evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning on December 29, 2007, Travis Goodwin was shot while sitting in a van parked outside of his mother's house. He died 12 days later from his wounds. Wright was charged with aiding and abetting the shooters, two men known as Worm and Black, by driving them to and from the shooting.

The primary witness for the prosecution was Dawayne Currie, who lived near the scene of the shooting. At trial, Currie testified to the following: He was playing video games with his six-year-old daughter around 2:00 AM when he saw Goodwin pull up and park the van in a driveway. About 20 minutes later, Currie heard gunshots and took his daughter to the back of the house before returning to look out the front window. He saw Black backing away from the van and firing a round with an AK47 assault rifle, Worm getting into the passenger side of Wright's black Charger holding a shiny handgun, and Wright sitting in the driver's seat. Black and Worm were wearing ski masks but he knew them from their manner of walking and distinctive body shapes. Even though it was dark and the car's windows were lightly tinted, Currie could see Wright's face and his braided hairstyle. Currie's testimony that the shooters used a handgun and an AK47 assault rifle was consistent with the type of shell casings found at the scene. Currie also acknowledged that, a few weeks prior to Goodwin's murder, Wright had paid him $100 to burn a drug house in the neighborhood that belonged to Worm. Currie did so knowing that Wright was going to blame Goodwin. Currie testified that Goodwin was involved in the drug business and had conflicts with Wright, Black, and Worm because of it.

Currie's testimony contained some inconsistencies. Although he testified that he told Goodwin's mother, Alice Smiley, who shot her son before Goodwin's funeral, Smiley testified that Currie never told her who killed her son. Currie testified that he saw Wright's face the night of the shooting, but he told defense counsel before trial that he never saw Wright's face. Currie also admitted at trial that he had lied under oath at the preliminary examination regarding his knowledge of any conflict between Wright and Goodwin. Despite the inconsistencies in his testimony, Currie was consistent in his identifications of the perpetrators. On redirect, Currie testified adamantly that Wright was the person who asked him to burn the drug house, blamed Goodwin for it, and drove the black Charger to and from the shooting.

Other than Currie's testimony, another component of the prosecutor's case-in-chief was recordings of phone calls Wright made from jail. The prosecutor argued that Wright admitted involvement in the murder when he made statements such as "even if I didn't do it," "he was out there the night when Trav got shot . . . . I remember," and "they know I didn't do no shooting." Wright also told his girlfriend of his decision to take out his braids and change his hairstyle. In the recordings, Wright alluded to giving Currie and his father something for not going to court or for going to court and telling the truth. Currie testified that Wright offered him money not to come to court.

A third component of the prosecutor's case, and the one that gave rise to Wright's habeas claims at issue in this appeal, was the testimony of Officer Thomas. He testified that, less than one month before his death, Goodwin flagged him down while he was on patrol and told him that Goodwin had received threats from Wright, Damien Bell, and Tommy Dickey, who were expanding their drug-sales territory. Defense counsel objected to the testimony as extremely

prejudicial and biased, but the trial court held that the testimony did not present a hearsay problem and could be admitted. Defense counsel impeached Officer Thomas by eliciting that he did not put Goodwin's concerns in a police report or seek out the individuals making the threats and that he was close to Goodwin's family. The prosecutor's closing argument referenced Officer Thomas's testimony. She stated, "Travis Goodwin reached out to a police officer and said trouble brewing; I'm worried about – I'm worried about somebody's going to hurt me," and "he named three people first of which was Nigel Wright."

The jury returned a guilty verdict, and Wright appealed. He argued that the trial court erred in admitting Goodwin's out-of-court statements through Officer Thomas. *People v. Wright*, No. 288975, 2010 WL 5373811, at *1 (Mich. Ct. App. Dec. 28, 2010). The appellate court concluded that the statements were inadmissible hearsay but declined to reverse "because it does not appear more probable than not that the error affected the outcome of the trial." *Id.* at *3. The court carefully reviewed the record and concluded, "[W]e do not agree [with Wright] that the inconsistencies in Currie's testimony were so consequential, or the inadmissible evidence so prejudicial, that one must conclude that more likely than not the jury's assessment of defendant's guilt or innocence turned on the inadmissible evidence." *Id.* With regard to Wright's Confrontation Clause claim, the court stated:

> [D]efense counsel objected to the admission of Officer Thomas's testimony about Goodwin's statements, but not on Confrontation Clause grounds. Accordingly, this issue is unpreserved. We review unpreserved constitutional error for plain error affecting substantial rights. A demonstration of plain error affecting substantial rights generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. For the reasons already noted, defendant has not established that the admission of these statements affected the outcome of his case.

*Id.* at *4 (internal quotation marks and citations omitted).

The Michigan Supreme Court declined review, and Wright filed the instant habeas petition in federal court. The district court conditionally granted the writ, finding that the Michigan court unreasonably applied clearly established federal law in concluding that Wright was not denied effective assistance of counsel when his attorney failed to object on Confrontation Clause grounds to Officer Thomas's testimony. *Wright v. Rivard*, No. 2:12-CV-14164, 2015 WL 3441154, at *1 (E.D. Mich. May 28, 2015). The district court further found that ineffective assistance of counsel excused Wright's procedural default of his Confrontation Clause claim, and that the Confrontation Clause violation was not harmless error. *Id.* The respondent appealed.

## DISCUSSION

In a habeas proceeding, we ordinarily review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (*en banc*). However, "when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes no credibility determination or other apparent finding of fact, the district court's factual findings are reviewed *de novo*." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (internal quotation marks omitted).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), an application for a writ of habeas corpus may not be granted unless the state court adjudication of the merits of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d)'s "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks and citations omitted).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle but unreasonably applies it to the facts of the case. *Id.* "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). Once a state court has determined that a claim lacks merit, a federal court is precluded from reaching a contrary conclusion as long as "fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks omitted). Similarly, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

**Ineffective Assistance of Counsel Claim**

Wright argues that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment when his attorney failed to object to Officer Thomas's testimony as a violation of the Confrontation Clause. "An ineffective assistance claim has two components: A

petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

On direct appeal, the state court applied *Strickland* and held that, "[e]ven if defendant could overcome the presumption of effective assistance, he has not established that any deficiency was prejudicial." *People v. Wright*, 2010 WL 5373811, at *5. The state court reasoned that admission of Goodwin's hearsay statements to Officer Thomas was not outcome determinative, "[i]n light of the other evidence connecting defendant with the murder." *Id.* at *4. In its analysis, the state court emphasized that, despite some inconsistencies in his testimony, Currie's identification of the suspects never wavered once he identified them. *Id.* at *3. Also, Currie's testimony was consistent with the expert witness's testimony about the type and number of firearms at the scene. *Id.* Further, even if Goodwin's statements had not come in through Officer Thomas, the jury still would have heard Currie testify that he burned the drug house knowing Goodwin would be blamed. *Id.*

In assessing Wright's ineffective-assistance claim on habeas review, the district court first reviewed *de novo* whether trial counsel was deficient because "the state court did not decide the question." *Wright v. Rivard*, 2015 WL 3441154, at *6. The court determined that because Goodwin's statements to Officer Thomas were testimonial, an objection under the Confrontation Clause would have been sustained and that counsel's failure to object was "outside the wide range of professionally competent assistance." *Id.* at *8. The court then reviewed under the deferential AEDPA standard the Michigan court's holding that Wright was not prejudiced, and found it to be unreasonable because "[t]he evidence implicating Wright was far from

overwhelming and rested almost exclusively on the testimony of Currie [who] . . . suffered from numerous credibility problems." *Id.* at *9. The court concluded that "[h]ad jurors not heard Goodwin's statements to Officer Thomas, there is a reasonable probability that the jury would have changed their assessment of Currie's credibility and their verdict." *Id.* at *10.

On appeal, the respondent asserts that the district court failed to give the state court's lack-of-prejudice finding true AEDPA deference and instead substituted its own evaluation of Currie's credibility. We agree and hold that, although Wright's trial counsel's performance was deficient, the state court's determination that Wright was not prejudiced by the deficiency was not unreasonable.

The district court correctly reviewed the deficiency prong *de novo*. *See Rayner v. Mills*, 685 F.3d 631, 636–39 (6th Cir. 2012) (analyzing the continued vitality of the rule that "AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court" in light of *Harrington* and concluding that this standard remains correct). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

The Sixth Amendment affords criminal defendants the right to confront the witnesses against them. U.S. Const. amend. VI. Under the Confrontation Clause, a testimonial statement of a witness who does not testify at trial cannot be introduced for its truth unless the witness is unavailable and the defendant had a prior opportunity to examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In the present case, Goodwin, the deceased victim, was unavailable but Wright did not have a prior opportunity to examine him. Therefore, the admission of Goodwin's statements to Officer Thomas violated the Confrontation Clause if the statements were testimonial in nature. *Id.* The Supreme Court has formulated this test:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006). Testimony that is volunteered, rather than elicited through interrogation, can also be testimonial. *Id.* at 822 n.1 ("The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.").

The district court correctly found Goodwin's statements to be testimonial. Goodwin was not in the midst of an ongoing emergency when he flagged down Officer Thomas, and the primary purpose of his statements was to "establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. Officer Thomas did not interrogate him; rather, Goodwin provided the information voluntarily. *See id.* at 822 n.1. We conclude that the Confrontation Clause violation was obvious, and Wright's trial counsel was objectively unreasonable for failing to object on this ground.

That determination does not end the inquiry, however. To show that he was prejudiced by his counsel's deficient performance, Wright "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly." *Woodford*, 537 U.S. at 24–25.

Wright first claims that the state court applied the wrong legal standard, contrary to *Strickland*, when it decided that admission of Goodwin's statements was not "outcome determinative." In analyzing Wright's ineffective assistance of counsel claim, the state court first set out the correct standard: "the defendant must show . . . that the deficiency was so prejudicial that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different." *People v. Wright*, 2010 WL 5373811, at *5. One paragraph later, however, it concluded that the error was not "outcome determinative." *Id.* The Supreme Court distinguished between these two standards in *Harrington*, 562 U.S. at 111–12, but noted that "the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest of cases." *Id.* at 112 (internal quotation marks omitted). Because the state court articulated the correct standard when it began its analysis, and because this case is not one of those "rare" situations in which the "slight" difference between the standards matters, *see id.*, we hold that the state court decision was not contrary to clearly established federal law.

Wright also claims that the state court unreasonably applied *Strickland* in finding that admission of Goodwin's statements did not prejudice him because "Goodwin's statements were the strongest evidence that the prosecution presented to corroborate Currie's identification of Wright." The state court's reason for finding no prejudice from the erroneous admission of Goodwin's statements was "the other evidence connecting defendant with the murder." *People v. Wright*, 2010 WL 5373811, at *4. The other evidence it summarized was: Currie's consistent identification of the perpetrators once he identified them; Currie's testimony that he burned the drug house knowing Wright would blame Goodwin; the firearm expert's testimony, which was consistent with Currie's testimony; and Currie's adamant testimony on re-direct that Wright

asked him to burn the house, blamed Goodwin for it, and drove Worm and Black to the scene. *Id.* at *3–4.

In light of the deferential AEDPA standard, said to be "doubly deferential" in analyzing a claim under *Strickland*, *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013), we hold that the state court's finding of no prejudice was not unreasonable. The expert testimony about firearms corroborated Currie's testimony. Currie's identifications were confident and consistent at trial. Further, although the state court apparently did not mention or rely on it, the jury could have found that Wright's statements in the phone calls from the jail implicated him in the murder and supported a guilty verdict.

**<u>Confrontation Clause Claim</u>**

Wright argued on direct appeal that the admission of Goodwin's statements violated his rights under the Confrontation Clause. The Michigan Court of Appeals reviewed for plain error because the issue was unpreserved, and held that the error did not affect the outcome of the trial. *People v. Wright*, 2010 WL 5373811, at *4. The respondent contends that Wright's claim is procedurally defaulted and, regardless, is without merit because any Confrontation Clause violation was harmless. The district court found that the procedural default was excused by ineffective assistance of counsel and concluded that the error in admitting Goodwin's statements was not harmless, for the same reasons that it articulated in its analysis of *Strickland* prejudice. *Wright v. Rivard*, 2015 WL 344154, at *11.

Federal courts on habeas review are not required to analyze whether an issue was procedurally defaulted before deciding against the petitioner on the merits, and we opt to begin by analyzing the merits of Wright's claim. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015).

As discussed above, despite the existence of a Confrontation Clause violation, Wright is entitled to relief only if the violation "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In other words, Wright must establish actual prejudice, and "[t]here must be more than a reasonable possibility that the error was harmful." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (internal quotation marks omitted) (citing *Brecht*, 507 U.S. at 637).

Our first step in analyzing Wright's Confrontation Clause claim is to determine whether the state court adjudicated the merits of the claim such that AEDPA deference applies to the state court's determination. 28 U.S.C. § 2254(d). The state court reviewed Wright's Confrontation Clause claim for plain error using the standard from *United States v. Olano*, 507 U.S. 725 (1993). *See People v. Wright*, 2010 WL 5373811, at *4 (citing *People v. Carines*, 597 N.W.2d 130, 138-39 (Mich. 1999) (adopting the rule from *Olano* for unpreserved claims of constitutional error)). Under *Olano*, a court should not grant relief on a forfeited claim unless there was (1) an error, (2) that was plain, (3) that affected substantial rights, and (4) that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732–36. In most cases, an error affected substantial rights if it affected the outcome of the trial-court proceedings. *Id.* at 734–35.

In ruling on Wright's appeal, the state court considered only the third portion of the plain-error analysis, *i.e.*, whether any Confrontation Clause violation affected substantial rights. *People v. Wright*, 2010 WL 5373811, at *4. It determined that Wright had not established that admission of Goodwin's statements affected the outcome of the case. *Id.* The portion of the plain-error analysis the Michigan court undertook in this case was analogous to a harmless-error

analysis because its conclusion that the error did not affect the outcome of the case is another way of saying that the error was not harmful. In *Davis v. Ayala*, the Supreme Court held that a state court's harmless-error analysis is an adjudication on the merits. 135 S. Ct. at 2198. Therefore, we find that the state court's determination in this case adjudicated the merits of Wright's claim for purposes of AEDPA,[1] and we will defer to it if it is not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

The state court determined that admission of Goodwin's statements did not affect the outcome of Wright's trial. *People v. Wright*, 2010 WL 5373811, at \*4. Although it did not articulate the harmless-error standard from *Brecht*, it conducted the same analysis when assessing whether the error was outcome-determinative. Although the standard for prejudice under *Strickland* is more onerous than the *Brecht* standard, *see Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995), our previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*. As with our ruling above regarding Wright's ineffective-assistance claim, we hold that the state court's determination that he was not prejudiced by the admission of Goodwin's statements was not unreasonable.

## CONCLUSION

Wright's Sixth Amendment right to confrontation was violated when the trial court admitted Goodwin's statements to Officer Thomas, and Wright's counsel rendered ineffective assistance by failing to object to this violation. However, Wright is not entitled to habeas relief

---

[1] Our opinion should not be read as holding that the plain-error and harmless-error analyses are equivalent or that every state-court plain-error analysis is an adjudication on the merits.

because the state court's determination that these violations did not affect the outcome of the trial was not contrary or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence. Accordingly, we must REVERSE the district court's conditional grant of the writ and DISMISS the complaint.

**KAREN NELSON MOORE, Circuit Judge, dissenting in part.** I respectfully dissent from the majority's opinion with respect to Wright's Confrontation Clause claim. Although the claim is procedurally defaulted, such procedural default is excused because Wright received ineffective assistance of counsel. Moreover, because the state court reviewed Wright's claim only for plain error, it was not an adjudication on the merits that would trigger AEDPA deference. Thus reviewing the state court's decision de novo, I believe that there was a Confrontation Clause violation that warrants habeas relief and would therefore affirm the district court's judgment.

For good reason, no one disputes that Wright procedurally defaulted on his Confrontation Clause claim. *See* Appellant's Br. at 38–39; Appellee's Br. at 30 (noting and not challenging the district court's finding of procedural default); *Wright v. Rivard*, No. 2:12-CV-14164, 2015 WL 3441154, at *11 (E.D. Mich. May 28, 2015). "The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). The Michigan Court of Appeals held that because Wright did not raise a Confrontation Clause objection at trial, he did not preserve such an objection on appeal. Because Wright failed to preserve his Confrontation Clause claim under Michigan law and because the Court of Appeals relied on Michigan law to determine whether Wright preserved his claim on appeal, *see People v. Wright*, No. 288975, 2010 WL 5373811, at *4 (Mich. Ct. App. Dec. 28, 2010) (citing *People v. Coy*, 669 N.W.2d 831 (Mich. Ct. App. 2003) (interpreting Michigan Rule of Evidence 103, which covers preservation of objections on appeal)), he has procedurally defaulted on his claim. *See Coleman*, 501 U.S. at 729–30; *cf. Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001) (finding procedural default because "[t]he

Michigan Court of Appeals held that Ray failed to preserve his claim regarding the improper admission of evidence by not objecting during trial").

Nevertheless, procedural default may be excused if it was caused by constitutionally ineffective assistance of counsel that prejudiced the defense. *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). Review of this exception to procedural default is de novo. *See id.* As the majority notes, trial counsel's failure to raise a Confrontation Clause objection to Goodwin's out-of-court statements constituted deficient performance. *See* Majority Op. at 9. In addition, on de novo review, this failure prejudiced Wright's defense. The Government put forth statements by Goodwin, the victim of this killing, regarding his fear of Wright and threats Wright made to him before he was shot. *See* R. 9-11 (Thomas Test. at 7–8) (Page ID #994–96); R. 9-12 (Closing Arg. at 14–16) (Page ID #1513–17). The only other evidence of Wright's motive for killing Goodwin came from Currie and Alice Smiley, Goodwin's mother. *See* R. 9-9 (Smiley Test. at 154) (Page ID #712) (testifying that Goodwin and Wright "became, I would say, enemies or not so good of friends"); R. 9-11 (Currie Test. at 68) (Page ID #1116).

As the district court observed, however, there was ample reason for the jury to be skeptical of Currie's testimony, damning though it otherwise might have been. Crucially, Currie identified Wright as the killer only after the police began to investigate him as a suspect and acknowledged that he did so to ensure that he was not blamed for Goodwin's death. *See* R. 9-11 (Currie Test. at 90, 126–28, 140) (Page ID #1160, 1232–36, 1260). In addition, Currie's testimony was inconsistent in significant respects. For instance, although he testified at trial that there were conflicts between Wright and Goodwin about their drug business, *see id.* at 68 (Page ID #1116), at a preliminary examination six months earlier, he testified that in fact there were no conflicts, *see id.* at 94–95 (Page ID #1168–70). Moreover, although Currie claimed that he could

identify Wright as the killer, his testimony on the basis for this identification is likewise inconsistent. Currie testified at trial that after he heard shots outside on the night of Goodwin's killing, he looked outside and could see Wright's face. *See id.* at 52 (Page ID #1084). However, he previously stated that he did not see Wright's face. *See id.* at 82–83 (Page ID #1144–46). And while Smiley's testimony also provides evidence of a motive to kill Goodwin, her general testimony that they were "enemies or not so good of friends" does not compare to direct statements from Goodwin that he received threats from Wright shortly before he was killed. In sum, Goodwin's statements were powerful evidence without which there is a reasonable likelihood that the jury would have found Wright not guilty. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011). Therefore, there is sufficient cause and prejudice to excuse procedural default.

The final and central question is whether there was a Confrontation Clause violation. On plain-error review, the state court of appeals determined that there was no such violation. State-court judgments that are adjudicated on the merits warrant AEDPA deference. *See* 28 U.S.C. § 2254(d). However, "[w]e have repeatedly held that plain-error review is not equivalent to adjudication on the merits, which would trigger AEDPA deference." *See Frazier v. Jenkins*, 770 F.3d 485, 497 n.5 (6th Cir. 2014) (citations omitted). The reason for this is simple. Although under either the harmless or plain-error standard of review, the alleged error must affect a "substantial right," *see* Fed. R. Crim. P. 52, "[w]hen an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected." *United States v. Vonn*, 535 U.S. 55, 62–63 (2002); *United States v. Stewart*, 306 F.3d 295, 322–23 (6th Cir. 2002); *People v. Carines*, 597 N.W.2d 130, 138

(Mich. 1999). Here, the state court of appeals reviewed Wright's Confrontation Clause claim for plain error and imposed on him the burden to establish "that the admission of [Goodwin's] statements affected the outcome of his case." *See Wright*, 2010 WL 5373811, at *4. Such an imposition is not equivalent to adjudication on the merits, but rather a perfunctory assessment of whether there was manifest injustice at Wright's trial. *See Frazier*, 770 F.3d at 497 n.5. Accordingly, the state court's decision does not warrant AEDPA deference and should be reviewed de novo.

Thus reviewing the state-court decision de novo, I conclude that there was a Confrontation Clause violation. As the majority notes, the admission of Goodwin's statements postmortem was an obvious violation of the Confrontation Clause. *See* Majority Op. at 9. In addition, their admission had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). Importantly for this case, "[t]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Because trial counsel's ineffective assistance prejudiced Wright's defense, there was necessarily a Confrontation Clause violation.

For the foregoing reasons, I would affirm the district court's judgment granting a writ of habeas corpus with respect to the Confrontation Clause issue.