RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KHALID M. TURAANI,

> *Plaintiff-Appellant*,

> *v.*

> No. 20-1343

CHRISTOPHER WRAY, in his official capacity as Director of the Federal Bureau of Investigation; CHARLES H. KABLE, IV, in his official capacity as Director of the Terrorist Screening Center; JASON CHAMBERS, in his individual capacity,

> *Defendants-Appellees*.

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Port Huron.
No. 3:19-cv-11768—Robert H. Cleland, District Judge.

Decided and Filed:  February 18, 2021

Before:  BOGGS, SUTTON, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Christina A. Jump, Charles D. Swift, CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA, Richardson, Texas, for Appellant.  Leif Overvold, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

─────────────────

## OPINION

─────────────────

SUTTON, Circuit Judge.  Khalid Turaani tried to buy a firearm at a gun show.  But after an FBI agent expressed concerns about Turaani to the gun dealer, the purchase fell through. Turaani sued.  Instead of suing the dealer, however, he filed the action against various officials at

the FBI, from the agent who approached the dealer to the Director.  The district court granted the government's motion to dismiss for lack of standing.  Because Turaani's injury cannot be fairly traced to the government's conduct, we affirm.

In 2018, Turaani went to a gun show in Birch Run, Michigan.  He approached a dealer to buy a gun.  When the dealer ran Turaani's name through the National Instant Criminal Background Check System, he received a "delay" response, R.1 at 10, requiring the dealer to wait three days before completing the sale.  *See* 28 C.F.R. § 25.6(c)(1)(iv)(B).  The dealer told Turaani about the hold.

The next day, FBI agent Jason Chambers went to the dealer's house, which doubled as his place of business, to speak to him about Turaani.  Chambers wanted to see what information Turaani had provided about himself and explained that "we have a problem with the company" Turaani "keeps."  R.1 at 11.  He showed photographs of Turaani with another person of apparent Middle Eastern descent, whom the dealer did not recognize.  And Chambers left his contact information with the dealer.

Turaani followed up with the dealer a few days later to purchase the gun.  The dealer explained that he had received a visit from the FBI.  While he "technically could sell the gun" because the three-day delay had passed without further prohibitions on the sale, the dealer told Turaani that he was "no longer comfortable doing so."  R.1 at 12.

Turaani sued.  He brought claims under the Privacy Act, the Administrative Procedure Act, the stigma-plus doctrine, and 42 U.S.C. § 1981, alleging that the government infringed his rights.  He sued the Director of the FBI, agent Chambers, and Charles Kable, who maintains the government's Terrorist Screening Database, all collectively referred to as the FBI.  The government moved to dismiss the lawsuit for lack of standing.  *See* Fed. R. Civ. P. 12(b)(1).  The district court granted the motion.  It reasoned that Turaani's response to the government's motion focused on his "right to obtain a weapon" and the direct and indirect injuries that flowed from the dealer's decision not to sell him one.  R.19 at 7.  Because the dealer's decision not to sell the gun was an independent choice the government did not require, the district court explained, Turaani failed to show that his injury was traceable to the FBI's actions.  This appeal ensued.

The U.S. Constitution limits the "judicial Power" to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2. To meet that requirement, a plaintiff must show that he has "suffered an injury in fact," the injury is "traceable" to the defendant's action, and a favorable decision likely will redress the harm. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Each element is an "irreducible constitutional minimum." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Turaani and the government spar over the second element, traceability, which looks to whether the defendant's actions have a "causal connection" to the plaintiff's injury. *Lujan*, 504 U.S. at 560. Indirect harms typically fail to meet this element, *see Warth v. Seldin*, 422 U.S. 490, 505 (1975), because harms "result[ing] from the independent action of some third party not before the court" are generally not traceable to the defendant, *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976). That means that, unless the defendant's actions had a "determinative or coercive effect" upon the third party, the claimant's quarrel is with the third party, not the defendant. *Bennett v. Spear*, 520 U.S. 154, 169 (1997); *see also Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017).

Gauged by these considerations, Turaani's injury stems from the actions of the gun dealer, not the FBI. Take stock of what the FBI did. Agent Chambers visited the dealer to "speak with" him about Turaani. R.1 at 11. That does not suffice. Contact does not equal coercion. Chambers then asked to see the information Turaani provided when he tried to purchase the gun. That is not enough. Else, every law-enforcement inquiry could generate a lawsuit premised on an inquiry. Chambers then showed the dealer a photograph of Turaani with an unknown man of apparent Middle Eastern descent, adding that he had concerns "with the company" Turaani "keeps." *Id.* That is not enough either. Passing along information, and ambiguous information at that, is a distant cry from forcing action. An indirect theory of traceability requires that the government cajole, coerce, command. *See Crawford*, 868 F.3d at 457. Venturing vague concerns does none of the above.

Think of it this way. Would Turaani have a case against a gun-control advocacy group if it had run an advertisement inspiring the dealer to stop selling firearms? It is hard to see how. Even if such an ad campaign caused Turaani's sale to fall through, his harm would arise from the

dealer's "voluntary choice." *Id.* What of a court decision that increased the risks of liability for gun dealers but did not prohibit gun sales? That court decision might affect a dealer's decision to sell a gun, but the choice not to sell the gun would be traceable only to the dealer's voluntary action, not to the court's decision, which still permitted gun sales.

Courts should not "presume either to control or to predict" the "unfettered choices made by independent actors not before the courts." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). A third party's "legitimate discretion" breaks the chain of constitutional causation. *Id.*; *see also Simon*, 426 U.S. at 42–43. Agent Chambers left the dealer with that discretion. He did not command or coerce; he explained only the reason for the inquiry. Article III demands more.

Turaani pushes back, claiming that the FBI's actions amounted to a sufficient cause of the dealer's decision not to sell the gun. But, in doing so, he never refutes the applicability of *Crawford*. It says that "an injury that results from the third party's *voluntary and independent* actions" does not establish traceability; the government must do more, say by establishing a "*command*" of the third party's actions. *Crawford*, 868 F.3d at 457. Turaani never asserts that Chambers commanded the gun dealer not to go through with the sale. The dealer instead exercised his discretion after speaking with Chambers. Because Chambers did not compel his chosen course of conduct, we are left only with the kind of attenuated causal chain that fails to meet Article III's requirements. Turaani's reliance on a "chain of contingencies," in all its rippling glory, creates "mere speculation," not a traceable harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

*Parsons v. U.S. Department of Justice*, 801 F.3d 701 (6th Cir. 2015), does not alter this conclusion. After the Department of Justice labeled the fans of a musical group a "gang," local and state law enforcement began harassing the fans, prompting a lawsuit by them against the federal government. *Id.* at 706–09. In agreeing that Article III causation existed for the claims, the court reasoned that it is "possible to motivate harmful conduct without giving a direct order to engage in such conduct." *Id.* at 714. But because of the cooperative relationship between local and national law enforcement, local law enforcement "may feel compelled to follow the lead of federal law enforcement and take action pursuant to information provided" by the Department of Justice. *Vapor Tech. Ass'n v. U.S. Food & Drug Admin.*, 977 F.3d 496, 502 (6th

Cir. 2020) (per curiam). Just as the tie between local and federal law enforcement is closer than the connection "between courts and litigants," *id.*, so the same is true of the relationship between independent firearms dealers and FBI agents. No compulsion occurred here.

Turaani argues that other injuries, such as reputational harm and violations of his privacy, suffice to show an Article III injury because they can be traced to the FBI's actions. But the only injury Turaani targeted in his response to the government's motion to dismiss was his inability to purchase a firearm. By failing to meaningfully identify his other injuries to the district court, he forfeited those arguments. *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 525 (6th Cir. 2020).

To the extent Turaani preserved arguments about other injuries—say reputational harms flowing from the FBI's alleged violation of the Privacy Act—that does not change things either. The key reputational harm he identified was his inability to purchase a firearm, which comes full circle back to the traceability problem already established. And while Turaani asserted in his complaint that his standing in the community suffered due to Chambers' comments, he offered no specifics supporting that claim. Generalized allegations of reputational harm are not enough without alleging "specific, concrete facts" showing a "demonstrable" injury. *Warth*, 422 U.S. at 508; *see also Parsons*, 801 F.3d at 711.

While this lack of specificity and other forfeitures may undermine today's claim, they do not prohibit Turaani from attempting to buy a gun again. If, at that point, he runs into similar problems and wishes to concretely complain about these other alleged injuries, nothing would prohibit him from doing so—if he meets Article III's requirements. Turaani, for what it is worth, has not been shy about protecting his rights. In 2017, he brought an action against similar parties for similar conduct. *See Turaani v. Sessions*, 316 F. Supp. 3d 998, 1004 (E.D. Mich. 2018).

We affirm.